**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| KERRY, INC., | |
| Plaintiff, | |
| v. | No. 10 cv 726 |
| MINCING TRADING CORPORATION D/B/A MINCING OVERSEAS SPICE COMPANY AND CAMDEN FIRE INSURANCE ASSOCIATION, | |
| Defendants. | |
| CAMDEN FIRE INSURANCE ASSOCIATION, | |
| Counter/Cross-Plaintiff, | |
| v. | |
| MINCING TRADING CORPORATION D/B/A MINCING OVERSEAS SPICE COMPANY AND KERRY, INC., | |
| Counter/Cross-Defendants. | |

## COUNTER/CROSS-COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Defendant/Cross Complaint Plaintiff Camden Fire Insurance Association ("Camden"), as Plaintiff, by and through its attorneys, Tressler LLP, and for its Counter/Cross-Complaint for Declaratory Judgment against Mincing Trading Corporation d/b/a Mincing Overseas Spice Company ("Mincing") and Kerry, Inc. ("Kerry"), states as follows:

## STATEMENT OF CASE

1.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, to determine an actual controversy between the parties, concerning the rights and obligations arising under a contract of insurance issued by Camden to Mincing in New Jersey.   This action seeks a declaration that Camden owes no coverage obligations under the certain policies of insurance with respect to the Mincing's liability to Kerry in this case (hereinafter "Kerry suit").

## PARTIES

2.      Camden is an insurance company formed under the laws of the State of New Jersey, and is duly authorized under the laws of the State of New Jersey to engage in the business of writing various types of insurance, including commercial liability insurance policies.

3.      Mincing is a New Jersey corporation with its principal place of business in Middlesex County, New Jersey.

4.      Kerry is a Delaware corporation with its principal place of business in the State of Wisconsin.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 exclusive of costs and interest, and the parties are citizens of different states.

6.      Venue is proper in this District pursuant to 28 U.S.C. 1391 as this case involves a claim of coverage under a liability insurance policy issued to Mincing for a lawsuit filed within this District with respect to substantial activities in this lawsuit that took place in this District.

2

## THE CAMDEN INSURANCE POLICIES

7.     Camden issued to Mincing two primary commercial liability and two umbrella liability policies effective annually from October 1, 2008 to October 1, 2010, bearing, respectively, policy numbers 713-00-90-23-0001 and 713-00-90-23-0002 (collectively "the Policies").  True and correct copies of the Policies are attached hereto as Exhibit A.

8.     The 2008-2009 and the 2009-2010 Camden primary policies contain the following provisions:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly

provided for under Supplementary Payments – Coverages A and B.

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or 'property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. Of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.      "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.      "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

4

(1) Reports all, or any part, of the "bodily injury" or 'property damage" to us or any other insurer:

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*     \*     \*

2. Exclusions

This insurance does not apply to:

\*     \*     \*

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or 'property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also

been assumed in the same "insured contract"; and

\*     \*     \*

k.     Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.     Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

\*     \*     \*

n.     Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\*     \*     \*

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty

6

to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit' seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\*    \*    \*

2.    Exclusions

This insurance does not apply to:

\*    \*    \*

e.    Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

\*    \*    \*

**SECTION V -- DEFINITIONS**

\*     \*     \*

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.[1]

\*     \*     \*

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions

14.     "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   a.      False arrest, detention or imprisonment;

   b.      Malicious prosecution;

   c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

---

[1] The primary Camden policies redefine "bodily injury" as follows:

**5.      BODILY INJURY REDEFINED -- MENTAL ANGUISH**

Under Section V the definition of "bodily injury" is replaced by the following:

"Bodily injury" means bodily injury, sickness, or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

\*     \*     \*

8

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

\* \* \*

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurring" that caused it.

For the purpose of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

(See Exhibit A).

9. The 2008-2009 and the 2009-2010 Camden primary policies contain the following endorsement:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION - COMMUNICABLE DISEASE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the transmission or alleged transmission, by any insured, of any communicable disease, including, but not limited to, Acquired Immune Deficiency Disease (AIDS).

*     *     *

(See Exhibit A).

10.   The primary Camden policies also contain the following endorsement:

COMMERCIAL   GENERAL   LIABILITY   COVERAGE   PART
PRODUCTS/COMPLETED OPERATIONS LIAIBILTY COVERAGE PART

SCHEDULE

| Coverage | Amount and Basis of Deductible PER CLAIM or PER OCCURRENCE | |
|---|---|---|
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $1,000 | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement.  If no limitation is entered,

10

the deductibles apply to damages for all "bodily injury" and "property damage," however caused):

A.      Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B.      You may select a deductible amount on either a per claim or a per "occurrence" basis.   Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.   The deductible amount stated in the Schedule above applies as follows:

1.      PER CLAIM BASIS.   If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

a.      Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

b.      Under Property Damage Liability Coverage, to all damages sustained by one person because of "property damage"; or

c.      Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

(1)     "Bodily injury";

(2)     "Property damage"; or

(3)     "Bodily injury" and "property damage" combined

as the result of any one "occurrence."

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury," a

11

separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage," person includes an organization.

2.   PER OCCURRENCE BASIS.  If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a.   Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b.   Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c.   Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1)   "Bodily injury;

      (2)   "Property Damage"; or

      (3)   "Bodily injury" and "property damage" combined

as the result of any one "Occurrence," regardless of the number of person or organizations who sustain damages because of that "occurrence."

C.   The terms of insurance, including those with respect to:

   1.   Our right and duty to defend the insured against any "suits" seeking those damages; and

   2.   Your duties in the event of an "occurrence," claim, or suit.

apply irrespective of the application of the deductible amount.

D.   We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon

notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

\*     \*     \*

(See, Exhibit A).

11.    The 2008-2009 and the 2009-2010 Camden umbrella policies include the following provisions:

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

a.     We will pay on behalf of the insured the "Ultimate Net Loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A and B.

We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage", but:

1.     The amount we will pay for "Ultimate Net Loss" is limited as described in SECTION III – limits of insurance;

2.     We may, at our discretion, investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we may have the duty to defend;

3.     Our duty to defend applies only to "suits" not covered by any "Underlying Insurance" shown in the Umbrella Declarations or by any other insurance or when the limits of "Underlying Insurance" have been exhausted;

13

4.     When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply, and;

5.     Our right and duty to defend end when we have exhausted the applicable Limit of Insurance by payment of judgments or settlements under Coverages A or B.

b.     This insurance applies to "bodily injury" and "property damage" only if

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II – WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1, of SECTION II – WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or

resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  (1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  (2)  Receive a written or verbal demand or claim for damages because of the "bodily injury" or "property damage; or

  (3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of service or death resulting at any time from the "bodily injury."

*        *        *

2.  Exclusions

This insurance does not apply to:

b.  Contractual Liability

  "Bodily injury" or "property damage" arising out of any liability assumed by the insured under any contract or agreement, except insofar as coverage is available to the insured as provided by "underlying insurance" as set forth in the Schedule Of Underlying Insurance.

*        *        *

l.  Damage to Your Product

15

"Property damage" to "your work" arising out of it or any part of it.

m.     Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*       \*       \*

o.     Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product"

(2)     "Your work," or

(3)     "Impaired property,"

if such product, work or property is withdrawn or recalled from the market or from sue by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\*       \*       \*

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.     Insuring Agreement

a.     We will pay on behalf of the insured the "Ultimate Net Loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies.  No other obligation or liability to pay sums or perform acts or services is covered unless     explicitly     provided     for     under

16

SUPPLEMENTARY PAYMENTS – COVERAGES A and B.

We will have right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury", but:

(1)    The amount we will pay for "Ultimate Net Loss" is limited as described in SECTION III – LIMITS OF INSURANCE

(2)    We may, at our discretion, investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend;

(3)    Our duty to defend applies only to "suits" not covered by any "Underlying Insurance" shown in the Umbrella Declarations or by any other insurance or by any other insurance or when the limits of "Underlying Insurance" have been exhausted;

(4)    When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.   However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply and;

(5)    Our right and duty to defend end when we have exhausted the applicable Limit of Insurance by payment of judgments or settlements under Coverages A or B.

b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

*        *        *

2.      Exclusions

This insurance does not apply to "personal and advertising injury":

\*      \*      \*

e.      Contractual Liability

For which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

\*      \*      \*

\*      \*      \*

## SECTION III – LIMITS OF INSURANCE

1.      The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.      Insureds;

b.      Claims made or "suits" brought; or

c.      Persons or organizations making claims or bringing "suits."

2.      The General Aggregate Limit is the most we will pay for the sum of:

a.      Medical expenses under Coverage C;

b.      Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c.      Damages under Coverage B.

3.      The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because

18

of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to Paragraph 2. Above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. Or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence.

6. Subject to Paragraph 5. Above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. Above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

*     *     *

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*        \*        \*

Duties In The Event Of Occurrence, Offense, Claim Or Suit

a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.   To the extent possible, notice should include:

(1)   How, when and where the "occurrence" or offense took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.   If a claim is made or "suit" is brought against any insured, you must:

(1)   Immediately record the specifics of the claim or "suit" and the date received; and

(2)   Notify us as soon as practicable.

c.   You and any other involved insured must:

(1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)   Authorize us to obtain records and other information;

(3)   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable

20

to the insured because of injury or damage to which this insurance may also apply.

d.   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

*        *        *

**SECTION V — DEFINITIONS**

*        *        *

3.   "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

*        *        *

16.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17.   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;

b.   Malicious prosecution;

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication, in any manner, of material that:

(1)   slanders or libels a person or organization. This does not include any slander or libel related to the actual or alleged

infringement or violation of any intellectual property rights or laws; or

(2) disparages a person's or organization's goods, products or services. This does not include any disparagement related to the actual or alleged infringement or violation of any intellectual property rights or laws;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*     \*     \*

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that properly. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\*     \*     \*

26.    "Ultimate Net Loss" means the total amount of damages in excess of the "retained limit" for which the insured is legally liable in payment of bodily injury," "property damage," and "personal and advertising injury." "Ultimate Net Loss" may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing.

"Ultimate Net Loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "Ultimate Net Loss" shall not include any expenses incurred by any insured, by us or by any "Underlying Insurance" carrier.

27.    "Underlying Insurance" means the coverage(s) afforded under insurance policies designated in the Schedule of Underlying Insurance of the Umbrella Declarations of this policy; including any policies issued to replace these policies which include the same limits; same coverage; the same terms and conditions.

*        *        *

30.    "Your product";

a.    Means:

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)    You;

(b)    Others trading under your name; or

(c)    A person or organization whose business or assets you have acquired; and

(2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.    Includes

23

      (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2)    The providing of or failure to provide warnings or instructions.

   c.    Does not include vending machines or other properly rented to or located for the use of others but not sold.

31.    "Your work":

   a.    Means:

      (1)    Work or operations performed by you or on your behalf; and

      (2)    Materials, parts or equipment furnished in connection with such work or operations.

   b.    Includes

      (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2)    The providing of or failure to provide warnings or instructions.

\*      \*      \*

(See, Exhibit A).

12.   The 2008-2009 Camden umbrella policy contains the following endorsement:

**EXCLUSION – COMMUNICABLE DISEASES**

This endorsement modifies the insurance provided by the following:

**COMMERCIAL UMBRELLA LIAIBLITY COVERGE FORM**

The following is added to the Exclusions section under COVERAGE A:

This insurance does not apply to "bodily injury" or "property damage" arising out of the transmission or alleged transmission, by any insured, of any communicable disease, including but not limited to Acquired Immune Deficiency Disease (AIDS).

The following is added to the Exclusions section under COVERAGE B:

This insurance does not apply to "personal and advertising injury" arising out of the transmission or alleged transmission, by any insured, of any communicable disease, including but not limited to Acquired Immune Deficiency Disease (AIDS).

\*       \*       \*

(See, Exhibit A).

13.   The 2009-2010 Camden umbrella policy contains the following endorsement:

**COMMUNICABLE DISEASE EXCLUSION**

This endorsement modifies the insurance provided by the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM**

A.      The following exclusion is added to Paragraph 2. Exclusions of Section I — Coverage A — Bodily Injury And Property Damage Liability:

2.      Exclusions

This insurance does not apply to: Communicable Disease

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

    a.    Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

    b.    Testing for a communicable disease;

    c.    Failure to prevent the spread of the disease; or

    d.    Failure to report the disease to authorities.

B.    The following exclusion is added to Paragraph 2. Exclusions of Section I — Coverage B — Personal And Advertising Injury Liability:

    2.    Exclusions

This insurance does not apply to: Communicable Disease

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

    a.    Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

    b.    Testing for a communicable disease;

    c.    Failure to prevent the spread of the disease; or

    d.    Failure to report the disease to authorities.

\*     \*     \*

(See, Exhibit A).

26

14.   Mincing has demanded that Camden provide coverage with respect to the claims by Kerry in this suit and Kerry has claimed the coverage exists for its claims against Mincing herein under Camden's policies.

15.   Camden has denied that it owes defense or indemnity obligations with respect to the <u>Kerry</u> lawsuit or any other claims or potential claims that may arise from Mincing's alleged transmission of salmonella in its products.

16.   An actual and justiciable controversy exists between Kerry, Mincing and Camden as to the availability of insurance coverage with respect to the <u>Kerry</u> lawsuit.   This Court is vested with the power to declare the rights and liabilities of the parties hereto and to adjudicate the dispute between the parties herein.

<u>**COUNT I – THE COMMUNICABLE DISEASE EXCLUSIONS APPLY**</u>

17.   Camden incorporates the allegations set forth within Paragraphs 1 through 16 as if fully set forth herein as Paragraph 17.

18.   The Policies exclude coverage for "bodily injury" or "property damage" arising out of the transmission or the alleged transmission by any insured of any communicable disease. (See, Exhibit A).

19.   The <u>Kerry</u> lawsuit alleges that Mincing distributed Salmonella contaminated black pepper thereby transmitting a communicable disease.

20.   Any alleged claim for damages because of "bodily injury" or "property damage" caused by an "occurrence" in the <u>Kerry</u> lawsuit therefore falls within the Communicable Disease exclusions in the policies.

21.   Accordingly, Camden owes no defense or indemnity obligations to Mincing with respect to the Kerry lawsuit.

WHEREFORE, Camden prays that this Honorable Court will enter judgment in its favor and against Mincing and Kerry declaring that Camden does not owe any duty to defend or indemnify Mincing claims in the Kerry lawsuit and award Camden such other and further relief as the Court deems just and proper, including an award of costs.

### COUNT II — NO "PERSONAL AND ADVERTISING INJURY" ALLEGED

22.   Camden adopts and incorporates Paragraphs 1 through 16 as though set forth fully herein as Paragraph 22.

23.   The Kerry lawsuit does not allege claims for damages because of "personal and advertising injury" as that term is defined in the Camden policies. (See, Exhibit A).

24.   Camden thus does not owe Mincing any defense or indemnity obligations for the Kerry lawsuit nor coverage for the referenced claims under the "personal and advertising injury" coverages in the policies.

WHEREFORE, Camden prays that this Honorable Court will enter judgment in its favor and against Mincing and Kerry declaring that Camden does not owe any duty to defend or indemnify Mincing in the Kerry lawsuit and award Camden such other and further relief as the Court deems just and proper, including an award of costs.

### COUNT III – NO COVERAGE FOR "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH OCCURRED OUTSIDE THE CAMDEN POLICY PERIODS

25.   Camden incorporates the allegations set forth within Paragraphs 1 through 16 as if fully set forth herein as Paragraph 25.

26.     The Policies do not provide coverage for claims for damages because of "bodily injury" or "property damage" which occurred outside of the policy periods.  (See, Exhibit A).

27.     The Kerry lawsuit alleges that prior to February 21, 2010, Mincing sold Kerry batches of black pepper which were allegedly contaminated with Salmonella.

28.     The 2008-2009 Camden primary and umbrella policies expired on October 1, 2009.

29.     Accordingly, any claims for damages because of "bodily injury" or "property damage" alleged in the Kerry lawsuit occurred subsequent to the expiration of the 2008-2009 Camden primary and umbrella policies.

30.     Therefore there is no coverage for the Kerry lawsuit under the 2008-2009 Camden primary and umbrella policies.

31.     Accordingly, pursuant to the 2008-2009 Camden primary and umbrella policies, Camden owes no defense or indemnity obligation to Mincing under the same with respect to the Kerry lawsuit.

WHEREFORE, Camden prays that this Honorable Court will enter judgment in its favor and against Mincing and Kerry declaring that Camden does not owe any duty to defend or indemnify Mincing for the Kerry lawsuit and award Camden such other and further relief as the Court deems just and proper, including an award of costs.

### COUNT IV – THE CONTRACTUAL LIABILITY EXCLUSIONS APPLY

32.     Camden adopts and incorporates Paragraphs 1 through 16 as though fully set forth herein as Paragraph 32.

33.   To the extent that the Kerry lawsuit alleges claims for damages because of "bodily injury," "property damage" or "personal and advertising injury," those claims are excluded, in whole or in part, by the Contractual Liability exclusions of the policies.

34.   Camden, thus, does not owe Mincing any coverage obligation for the <u>Kerry</u> lawsuit for those claims.

WHEREFORE, Camden prays that this Honorable Court will enter judgment in its favor against Mincing and Kerry declaring that Camden owes no coverage obligations in the <u>Kerry</u> lawsuit, and award Camden such other and further relief as this Court deems just and proper, including an award of costs.

## COUNT V – THE YOUR WORK/YOUR PRODUCT EXCLUSIONS APPLY

35.   Camden adopts and incorporates Paragraphs 1 through 16 as though fully set forth herein as Paragraph 35.

36.   To the extent that the <u>Kerry</u> lawsuit alleges claims for damages because of ""property damage," those claims are excluded, in whole or in part, by the Your Work/Your Product exclusions of the policies.

37.   Camden, thus, does not owe Mincing any coverage obligation for the <u>Kerry</u> lawsuit for those claims.

WHEREFORE, Camden prays that this Honorable Court will enter judgment in its favor against Mincing and Kerry declaring that Camden owes no coverage obligations for the <u>Kerry</u> lawsuit and award Camden such other and further relief as this Court deems just and proper, including an award of costs.

## COUNT VI – THE RECALL EXCLUSIONS APPLY

38.   Camden adopts and incorporates Paragraphs 1 through 16 as though fully set forth herein as Paragraph 38.

39.   To the extent that the <u>Kerry</u> lawsuit alleges claims for damages because of "bodily injury" or "property damage," those claims are excluded, in whole or in part, by the Recall exclusions of the policies.

40.   Camden, thus, does not owe Mincing any coverage obligation for the <u>Kerry</u> lawsuit for those claims.

WHEREFORE, Camden prays that this Honorable Court will enter judgment in its favor against Mincing and Kerry declaring that Camden owes no coverage obligations in the <u>Kerry</u> lawsuit and award Camden such other and further relief as this Court deems just and proper, including an award of costs.

## COUNT VII – NO "BODILY INJURY" ALLEGED IN THE KERRY LAWSUIT

41.   Camden adopts and incorporates Paragraphs 1 through 16 as though fully set forth herein as Paragraph 41.

42.   The Kerry lawsuit does not allege a claim for damages because of "bodily injury" caused by an "occurrence" as those terms are defined in the Camden policies.  (See, Exhibit A).

43.   Camden, thus, does not owe Mincing any defense or indemnity obligations for the <u>Kerry</u> lawsuit under the "bodily injury" coverages in the policies.

WHEREFORE, Camden prays that this Honorable Court will enter judgment in its favor and against Mincing and Kerry declaring that Camden does not owe any duty to defend or indemnify Mincing in the <u>Kerry</u> lawsuit under the "bodily injury" coverages in the policies and

31

award Camden such other and further relief as this Court deems just and proper, including an award of costs.

**COUNT VIII -- DEDUCTIBLE**

44.   Camden adopts and incorporates Paragraphs 1 through 16 as though fully set forth herein as Paragraph 44.

45.   The primary liability policies issued by Camden to Mincing all contain a $1,000 per claim deductible which is payable prior to any liability Camden may have under the policies.

46.   For Kerry's claim against Mincing, a $1,000 per claim deductible is due and payable before Camden owes any coverage.

WHEREFORE, Camden prays that this Honorable Court will enter a judgment in its favor and against Mincing and Kerry declaring that Mincing must pay the $1,000 deductible before Camden owes any obligation to indemnify under the subject policies for the Kerry lawsuit and award Camden such other and further relief as this Court deems just and proper, including an award of costs.

Respectfully submitted,


By:   _____ s/Ashley L. Christensen_____

One of the Attorneys for Camden
Fire Insurance Association


Michael J. Duffy -- 6196669
Shevonn K. Willis -- 6284021
Ashley L. Christensen -- 6303052
233 South Wacker Drive
22nd Floor
Chicago, IL 60606
(312) 627-4000
(312) 627-1717 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2011, I electronically filed the aforesaid document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record in this case by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By:   /s/  Ashley L. Christensen

Ashley L. Christensen
#6303052
achristensen@tresslerllp.com
Tressler LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000
(312) 627-1717 (fax)